THE CALDWELL MILLING COMPANY, a *Partnership, etc.,*
v. E. V. SNIVELY.

No. 15,648. ( 96 Pac. 943.)

SYLLABUS BY THE COURT.

1. CONTRACTS — *Annulment* — *Employer and Employee.* The
written contract of employment upon which this action was
brought is held not to have been annulled by the statement in
a letter from the employer to the .employee "that your busi-
ness has been very unsatisfactory to us in the extreme," when
the employer thereafter continued to fill and ship orders sent.
by the employee and to pay him commissions thereon in ac-
cordance with the terms of the contract.

2. ——— *Modification by Parol Agreement—Question of Fact.*
Whether a written contract is, after its execution, modified
by a parol agreement· is a question of fact for the jury, and
when the evidence is conflicting the finding of the jury
thereon, approved by the trial court, is conclusive of the fact.
on proceedings in error to this court.

Error from Sumner district court; CARROLL L.
SWARTS, judge. Opinion filed July 3, 1908. Affirmed.

STATEMENT.

E. V. SNIVELY brought this action in the district
court of Sumner county, and his amended petition pur-
ported to state two causes of action : (1) For damages
for the breach of a written contract of employment,
and (2) for a balance claimed to be due him under the
contract for the full term of employment specified
therein. The contract reads:

"ST. JOSEPH, MO., January 31, 1898.
"This article of agreement, entered into this 31st
day of January, 1898, by and between Caldwell Milling
Company, parties of the first part, and E. V. Snively,
party of the second part:
"Witnesseth, that the said parties of the first part
hereby agree to give him the benefit of the regular
brokerage of 5c per hundred on all flour sold in the
territory, namely, Kansas City, east as far as Peoria—
in fact all territory east of the Missouri river and
north of Topeka, except such customers as the parties

of the first part already have, the towns being Bloomington, Ill., and Springfield, Ill.

"In consideration of the above, the said party of the second part agrees to represent the parties of the first part, make sales of their flour exclusively, except in such cases where the parties of the first part are unable to fill orders; said party of the second part is to keep thoroughly informed as to the prices; and any time he is informed by the said parties of the first part of an advance of 5c per bushel in wheat he is expected to make an advance in price of flour 10c per hundred without any further notice, and make that a basis, say 10c per hundred, for every advance in wheat of 5c per bushel, unless otherwise agreed upon. This contract stands good for three years, when the market will justify sales in that territory.

"However, at any time the said party of the second part would be unable to represent the business or cause it to be represented in a satisfactory manner, then said parties of the first part would be released from this article of agreement, to be decided by disinterested parties whether said party of the second part has properly represented the interests of the said parties of the first part."

The answer, in substance, alleged: (1) Full payment of all sums due or to become due under the contract; (2) that both the first and second causes of action stated were barred by the statute of limitations; (3) that by the terms of the last paragraph of the contract the defendants had the right to terminate it and discharge the plaintiff whenever he was unable to represent the business to the satisfaction of defendants, and that only a few months after the execution of the contract they so notified the plaintiff and terminated the contract.

A jury was impaneled to try the case, and the objection of the defendants to the introduction of any evidence on the ground that the petition showed on its face that all claims therein were barred by limitation was overruled. The verdict and judgment were in favor of Snively, for $4219.42, and the defendants prosecute proceedings in error.

*C. E. Elliott, W. T. McBride,* and *H. T. Dedrick,* for plaintiffs in error.

*Ed T. Hackney, W. P. Hackney,* and *J. T. Lafferty,.* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: It appears from an instruction that the first cause of action was abandoned on the trial, and the case was tried on the part of plaintiff for the recovery of commissions under the terms of the contract. On the part of the defendants it was contended that about August 1, 1898, the written contract was abrogated, or was so modified that plaintiff was thereafter to receive a commission only on such sales of flour as he actually made, and not on sales made by the defendants. or others within the territory specified in the contract.. The letters of the manager of the mill company, introduced in evidence, show that the defendants accepted and filled orders for flour sent by plaintiff until about the beginning of the year 1900. It was admitted that plaintiff had been paid $1306.03, and the court fairly submitted to the jury the claim that the contract had been modified by mutual consent. The evidence was. conflicting as to this proposition, and was partly letters exchanged between plaintiff and the defendants' manager and partly oral conversations testified to by the manager. The letters were not conclusive of these facts, and it was therefore within the province of the jury to determine them. The jury made no special findings of fact, but it is evident from the general verdict that they found these contested facts against the defendants. The facts inhering in the verdict, which was approved by the court in denying the motion for a new trial, can not be reconsidered here, unless entirely unsupported by evidence.

No great injustice appears to have been done. The contract appears to have been made for the purpose of introducing the defendants' flour in a large territory

where, at the time, they had only two customers. Yet by their admissions about 355 car-loads were sold in this territory within three years. If, as is to be inferred from the verdict, the written contract was neither canceled nor modified, plaintiff was entitled to his commission upon all sales made in the specified territory within the life of the contract, whether he had anything directly to do with any specific sale or not, provided, of course, he performed his part. of the contract.

The defendants' objection to the introduction of any evidence, on the ground that it appeared on the face of the petition that the cause of action was barred by the statute of limitations, was not well taken. The second cause of action was upon the written contract, which upon its face was in effect three years from January 31, 1898, and the plaintiff had five years after the maturity of his claim thereunder to bring this action. The amended petition was filed in August, 1904, less than four years thereafter. Moreover, it has not been made apparent why the time of limitation should not be computed from the maturity of the cause of action to the commencement of the action, in 1902. By the demurrer to the evidence it was attempted to raise the same question, and the demurrer is bad for the same reason.

The defendants assign as error the refusal of the court to give their requested instructions numbered 2, 4 and 5. These instructions are based upon the theory that whenever the plaintiff was unable to represent the business of the defendants to their entire satisfaction, of which their say-so was final, their obligations under the contract, *ipso facto,* ceased. The purpose and purport of the contract is quite different. By the terms of the contract plaintiff was employed, without salary and with no allowance for traveling or other expenses, for a definite term of three years, as a promoter of the defendants' trade in flour, in an extensive territory where they had but two customers. If he failed to

secure any business, he would lose both his time and his expenses. If he succeeded in any degree, the measure of his success was the measure of his compensation—he would get a commission based on the amount of sales, by whomsoever actually made, in the territory during the term of employment. He might lose time and expenses in the fore part of the term and have a rich income in the latter part thereof. The defendants took no chances. If no trade was secured, the effort cost them nothing; and if plaintiff succeeded, they got what they desired at the expense of a small commission. In making the contract an attempt was made by a provision for arbitration to provide a method of discharging the plaintiff at the defendants' option. The contract was drawn by the defendants' manager, and the provision for arbitration, through ignorance of the necessary provision or other cause, was perhaps not sufficiently specific to become effective. The contract, however, viewed in connection with its purpose and the circumstances under which it was made, is sufficient to negative the construction put upon it by these requested instructions, viz., that the defendants were released from the contract at any time they felt dissatisfied with plaintiff's services or when they so informed him.

We have examined the other instructions requested and refused, and also the instructions given by the court to which exceptions are taken, and we think there is no material error therein.

We find no uncontroverted evidence that the defendants ever informed plaintiff that he was discharged or that they considered the written contract no longer in force. They did inform him that his services were unsatisfactory to them, but thereafter continued to fill orders sent them by him, and to pay him a commission thereon in accordance with the terms of the contract. Nor do we find uncontroverted evidence that the written contract was modified by mutual consent. The con-

tract was either in force during the full three years specified therein or it was at some time before its expiration annulled or modified. The burden of proving annulment or modification was upon the defendants, and the jury were justified in finding, as they evidently did, that the contract remained in full force for the time specified. If so, plaintiff was entitled to a commission upon flour sold by the defendants in the territory specified in the contract during the three years.

The defendants in their brief say:

"The evidence showed that there was sold and shipped into the territory covered by the contract from January 31, 1898, to January 31, 1901, 251 cars of flour upon which Snively was paid no commission."

It was admitted also that defendants had paid a commission on 104 car-loads, that each car of flour contained 125 barrels, and that each barrel contained 200 pounds. The commission on 251 cars at the stipulated rate, with interest thereon from January 31, 1901, to the date of the verdict, is the exact amount of the verdict and judgment. This disposes of the only additional question raised by the motion for a new trial, viz., that the verdict was excessive.

The judgment is affirmed.